

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

MAY 09 2011

Stephan Harris, Clerk
Cheyenne

Thomas Metier, Esq. #52631
Metier Law Firm, LLC
4828 South College Avenue
Fort Collins, CO 80525
970/377-3800

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

OKAL 'SANDY' MEZGER as personal )
representative of Clara Belle Spracklen's Estate )
)
    Plaintiff, )
)
v. )  Civil Action No. 11-CV-185-F
)
SSC CASPER OPERATING COMPANY, )
LLC, d/b/a POPLAR LIVING CENTER; )
MARINER HEALTH CARE MANAGEMENT )
COMPANY, a Delaware Company, )
its agents and employees; SAVA SENIOR )
CARE, LLC., a Delaware Company, its )
agents and employees and SAVA SENIOR )
CARE, INC., a Delaware Company, its agents )
and employees., )
)
    Defendants. )

---

### COMPLAINT AND JURY DEMAND

---

    COME NOW, the Plaintiff, by and through undersigned counsel, and hereby complains and alleges against the above named Defendants as follows:

## VENUE AND JURISDICTION

1. At all relevant times hereto, Clara Spracklen was a patient at a skilled nursing facility operated by SSC Casper Operating Company, LLC., d/b/a Poplar Living Center (hereinafter "Poplar") in the city of Casper, County of Natrona, State of Wyoming.

2. Plaintiff Sandy Spracklen is the Personal Representative of Clara Spracklen's Estate, pursuant to an Order of the District Court, Converse County, Wyoming, dated May 6, 2011, Probate Case Number PR20115704

3. Upon information and belief, the Defendant SSC Casper Operating Company, LLC, doing business as Poplar Living Center, is a Delaware Corporation duly licensed through the Secretary of State, State of Wyoming, and is doing business and/or resides in Natrona County. The Registered Agent for Defendant Poplar is The Corporation Company, 1720 Carey Avenue, Cheyenne, Wyoming 82001.

4. Upon information and belief, Defendant Poplar owned, operated, or managed the skilled nursing and/or rehabilitation center in the City of Casper, County of Natrona, Wyoming, and located at 4305 South Poplar Street, Casper WY 82601.

5. At all times relevant, Defendant Mariner Health Care Company (hereinafter "Mariner") was the "parent" company of Defendant Poplar.

6. At all times relevant, Defendant Sava Senior Care, LLC was the "parent" company of Defendant Poplar.

7. At all times relevant, Defendant Sava Senior Care, Inc. was the "parent" company of Defendant Poplar.

2

8. At all times relevant, and upon information and belief, Defendants Sava Senior Care, LLC and Save Senior Care, Inc. (hereinafter "Sava") was the management companies for Defendant Mariner's leased skilled nursing home facilities including Poplar Living Center.

9. Jurisdiction in this Court is proper pursuant to 28 USCS §1332 as diversity exists between all parties to this civil action. Plaintiff is resident of Wyoming and Defendants SSC Casper Operating Company, LLC; Mariner Health Care Company; Save Senior Care, Inc.; and Sava Senior Care, LLC are Delaware companies.

10. Jurisdiction in this Court is also proper as Plaintiff's seek damages in excess of $75,000.00.

11. The action is filed within the proper time period for the filing of such actions, as the cause of action occurred on or about May 10, 2009.

12. A Complaint was filed with the Wyoming Medical Review Panel, subsequently Defendants did not file and answer with the panel and the Director of the Wyoming Medical Review Panel issued its *Order of Dismissal for Failure to File Answer* March 25th, 2011.

13. The negligent acts or omissions of the Defendants, alleged herein, occurred in Natrona County, State of Wyoming.

14. The injuries and ultimate death of Clara Spracklen occurred in Natrona County, State of Wyoming.

## GENERAL ALLEGATIONS

15. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if more fully set forth herein.

16. Defendant Poplar is a limited liability company that owns and/or operates a skilled nursing facility and/or rehabilitation service center located in Wyoming.

17. At all times relevant hereto, Defendant Poplar was doing business as a skilled nursing facility and/or a rehabilitation service center in and designated for Natrona County, Wyoming to provide rehabilitative and supportive living healing environments for individuals with recovering from physical ailments such as Clara Spracklen.

18. Defendants, by holding themselves out as providers of such special services to the public were at all times relevant hereto, responsible for providing high quality skilled nursing care and rehabilitative services to their patients, consistent with their health and safety requirements, and needs for protection and standards of care, as well as the common law standards of due care for skilled nursing facilities and supportive living environments.

19. Suit is brought against Defendant Poplar, Mariner and Sava both directly and vicariously and as joint venture. Poplar, Mariner and Sava are sued on theories of principal agent, respondent superior, vicarious liability, civil conspiracy and joint venture for the actions

and omissions of its employees and agents who were involved in the hereafter complained of series of neglectful and careless incidents.

20. At all times relevant hereto, aides, case managers, social workers, occupational therapy workers, physical therapy workers, nurses, attendants and other staff of Poplar who failed to provide or secure safe and appropriate care, including necessary charting and documentation, supervision, monitoring, evaluations, and assessments, were acting within the course and scope of their employment and/or agency with Defendants.

21. Defendants Poplar, Mariner and Sava are also sued directly for their negligent supervision of staff, inadequate and negligent staffing, inadequate staff training with respect to the monitoring, supervision, safety, and protection of fragile patients such as Clara Spracklen, and for failure to develop, implement, modify or otherwise ensure appropriate policies/procedures and individual care plans necessary for the health, safety, dignity, and protection of patients such as Clara Spracklen, all of which actions and omissions have now resulted in the injuries and damages complained of herein.

## FACTUAL ALLEGATIONS

22. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

23. Clara Spracklen was a 79-year-old woman who was mentally and emotionally healthy and lucid, and who had been living independently at Glenrock Assisted Living, when she fell on March 17, 2009. She was taken to Wyoming Medical Center where it was learned that she had sustained a fracture of the cervical spine at the C1-C2 levels. Treatment

would require a course of physical and occupational rehabilitation and use of a hard cervical collar for stability, but the fracture was expected to heal without surgery.

24. The following day, March 18, 2009, Ms. Spracklen was admitted to Poplar for subacute care (24-hour skilled nursing care and close supervision) and rehabilitation.[1] Ms. Spracklen also suffered from several medical conditions including rheumatoid arthritis and moderate osteoporosis. However, she was cognitively and neurologically intact.

25. As a subacute care patient at Poplar, Ms. Spracklen was entitled to receive nursing home care and services in accordance with the following standards:

- 42 C.F.R. 483(b);
- 42 C.F.R. 488;
- Wyoming Health Facilities Act (W.S. § 9-2-1204, et seq.);
- Wyoming Administrative Procedures Act (W.S. §§ 16-3-101, et seq.);
- Wyoming Administrative Code, Chap. 11, et seq.
- Wyoming Administrative Code, Chap. 19, et seq.;
- Wyoming Administrative Code, Chap. 3, et seq.;
- Other laws and regulations governing nursing homes;
- General long term care community standards and clinical practice guidelines applicable in Wyoming; and
- PLC / SavaSeniorCare internal operating standards, i.e., policies, procedures, protocols, systems, job descriptions, etc.

26. Among transfer orders upon her admission to Poplar were a three-day calorie count for intake, indwelling Foley catheter in place, nutritional evaluation, skin assessment, pre-albumin in one week, and *high* fall risk precautions. Ms. Spracklen was dependent on

---

[1] "Subacute care" is defined by the American Health Care Association as "comprehensive inpatient care designed for someone who has an acute illness, injury, or exacerbation of a disease process. It is goal oriented treatment rendered immediately after, or instead of acute hospitalization to treat one or more specific active complex medical conditions or to administer one or more technically complex treatments, in the context of a person's underlying long-term conditions and overall situation."

6

Poplar for (24) hour skilled nursing care and close bedside supervision due to limitations imposed by the following diagnoses:

- Dysphagia
- Femoral Neck Fracture
- Hypothyroidism
- Atrial Fibrillation
- Rheumatoid Arthritis
- Osteoporosis
- Tachycardia
- Constipation
- Pneumonia

27. Given the fact that Ms. Spracklen had an unstable cervical fracture placed her at the highest possible risk for falling with serious injury. It should have been among Defendants' highest priorities to prevent Mrs. Spracklen from falling, yet no effort to do so was made

28. Ms. Spracklen fell, on at least two separate occasions, while in Defendants' custody and control.

29. Supplemental nutrition should have been emphasized from the time of Ms. Spracklen's admission to Poplar. Based on an inadequate nutritional plan, Ms. Spracklen was malnourished throughout her stay at Poplar, which led to her death.

30. Ms. Spracklen was malnourished while at Poplar, eating and drinking very little, and yet nothing was done by Poplar to replenish her nutritional needs on an immediate basis. Due to Poplar's negligence, Ms. Spracklen's prognosis was becoming grave in the absence of supplemental nutrition in some form.

31. Ms. Spracklen lost more than 20% of her body weight while under the care and supervision of Poplar. Her average daily meal intake had dropped significantly. Ms. Spracklen died while in Poplar's care and supervision on May 10, 2009.

32. The death certificate listed malnutrition as the primary cause of Ms. Spracklen's death.

33. Defendants were responsible for caring for Ms. Spracklen and were responsible for her daily health, daily nutrients and daily medications.

34. Defendants Poplar, Mariner and Sava were responsible for the hiring, training and supervision of their staff.

35. As a direct result of the negligence of the Defendants Poplar, Mariner and Sava and their agents, employees and servants, Clara Spracklen suffered severe injuries while in the facility, and those injuries lead to and caused her death.

36. At all relevant times Defendants were in a fiduciary position of trust toward Clara Spracklen and her family and owed her the highest duties of good care, adequate and proper physical and psychological protection.

## FIRST CLAIM FOR RELIEF
### (Negligent Hiring, Staffing and Supervision - All Defendants)

37. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if more fully set forth herein.

38. Defendants owed a duty to Clara Spracklen to hire and properly supervise competent and fit individuals to care for elderly, frail and dependent individuals, including Clara Spracklen.

39. Defendants owed a duty to Clara Spracklen to adequately staff the nursing home in order to insure proper care and that her nutritional needs where met.

40. Defendants breached their duty to Clara Spracklen and to others in the general public to hire and properly supervise competent and fit individuals to care for elderly, frail and dependent individuals. Defendants breached their duty to Clara Spracklen and others in the general public to adequately staff the facility.

41. The injuries sustained while at Poplar, and the death of Clara Spracklen was proximately caused by the negligence of Defendants hiring and/or supervision.

### SECOND CLAIM FOR RELIEF
(Negligence - All Defendants)

42. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if more fully set forth herein.

43. Clara Spracklen was routinely neglected by the staff at Poplar, which led to Ms. Spracklen's significant weight loss of more than 20% of her body weight; contracting avoidable infections; subsequent falls while under the supervision and control of Defendants, among others.

44. Defendants had a duty to monitor the health, safety and care of the patients including Ms. Spracklen who entrusted their lives to the nursing staff and facility.

45. Defendants had a duty to assist in the rehabilitation and healing of their patients including Ms. Spracklen without starving and killing them.

9

46. Defendants had a duty to accurately assess Ms. Spracklen and their patients' physical, mental and nutritional state and accurately document their findings.

47. Defendants had a duty to report their findings in a timely manner to attending physicians, family and staff.

48. Defendants breached their duties to Ms. Spracklen and their patients by negligently performing, or not performing at all, these duties.

49. Defendants were negligent and substandard in at least, but not limited to, the following particulars:

    a. In failing to monitor the care and health status of its patient Clara Spracklen;
    b. In failing to perform on-site monitoring of the services and support provided to its patient Clara Spracklen;
    c. In failing to address and treat Clara Spracklen's ongoing nausea and pain;
    d. In failing to maintain current assessment information on patient Clara Spracklen;
    e. In failing to have available current assessment information to support decisions regarding appropriate plans for a patient's health and safety;
    f. In failing to provide proper supervision and monitoring of staff;
    g. In failing to recognize and notify physician promptly of change in status of its patient Clara Spracklen;
    h. In failing to establish and implement procedures for Clara Spracklen as a 'fall risk' patient;
    i. In failing to protect and care for (including but not limited to MS. Spracklen's nutritional requirements) frail, malnourished and dependent patient, Clara Spracklen;
    j. In failing to properly staff for the weekend shifts to ensure that Clara Spracklen's nutritional and medical needs were met;
    k. In failing to provide "sub-acute" care to Ms. Spracken;
    l. In failing to provide a sufficient number of qualified staff to be able to care for Ms. Spracklen appropriately;
    m. In failing to prevent Ms. Spracklen from contracting avoidable infections;
    n. In failing to provide efficient facility administration.

50. Defendants were negligent in the manner in which it operated its skilled nursing facility and/or rehabilitative services provider. Such negligence includes, but is not limited to, the following:

   a. Failure to protect frail, malnourished and vulnerable patient Clara Spracklen;
   b. Failure to properly and timely evaluate patients;
   c. Failure to provide proper and appropriate care planning;
   d. Failure to ensure that the nutritional needs of patients were met;
   e. Failure to follow admission orders;
   f. Failure to accurately assess Clara Spracklen's malnutrition that ultimately lead to her demise;
   g. Failure to develop appropriate nutritional plan of care for the prevention of malnutrition and death;
   h. Failure to properly implement and monitor "restorative dining";
   i. Failure to regularly train dining staff with each shift change;
   j. Failure to timely address and treat Ms. Spracklen's swallowing difficulties;
   k. Failure to establish a definitive consultation to address Ms. Spracklen ongoing pain and nausea;
   l. Failure to monitor her fluid and calorie intake;
   m. Failure to notify physicians and family in timely manner that change in condition had occurred;
   n. Failure to recognize severe malnutrition;
   o. Failure to ensure proper supervision and monitoring to prevent falls;
   p. Failure to recognize substandard care;
   q. Failure to provide proper and appropriate supervision and monitoring of personnel who attend to the reasonable needs of the patients of its skilled nursing facilities operated under the business of SSC Casper Operating Company, LLC;
   r. Failure to maintain and protect the physical and nutritional needs of its resident, Clara Spracklen;
   s. Failure to develop and implement procedures and safeguards to prevent Ms. Spracklen from falling while in the facility;
   t. Failure to progressively monitor and alter a patient's care plan where conditions change;
   u. Failure to keep patient safe and free from harm and death;
   v. Failure to respond to changing condition of a patient;

11

w. Failure to implement and follow proper and appropriate policies and procedures to prevent harm to patient;
    x. Failure to adequately and accurately document patient's charts and or records.

51. Defendants were negligent and substandard in at least, but not limited to, the following:

    a. 42 C.F.R. 483.12;
    b. 42 C.F.R. 483.13(b)(c);
    c. 42 C.F.R. 483.25;
    d. 42 C.F.R. 483.15;
    e. 42 C.F.R. 483.20;
    f. 42 C.F.R. 483.25(h);
    g. 42 C.F.R. 483.75;
    h. 42 C.F.R. 483.30;
    i. 42 C.F.R. 483.10(b)(11);
    j. 42 C.F.R. 483.13(c)(2).

52. The failures of Defendants to provide or obtain the above listed proper and timely care, attention, supervision, evaluation, nutrient, fall risks, monitoring and health and safety precautions, were breaches of its duties of due care to Clara Spracklen caused her injuries and damages while in the custody and Defendants and are the cause of Ms. Spracklen's untimely death.

53. The direct actions and omissions of the Defendants and their employees and agents acting within the scope of their agency and employment, as set forth above, also constituted a negligent breach of their duties of due care owed to Clara Spracklen to provide reasonably appropriate and high quality skilled nursing care, attendant and other care, supervision and rehabilitative services necessary to meet her needs and assure her health, safety and not operate their facility in a slaughter house fashion.

54. As a direct and proximate result of the above-mentioned conduct, all of which was negligent and substandard, Clara Spracklen suffered great injuries and ultimately lost her life while a resident at Poplar.

## THIRD CLAIM FOR RELIEF
### (Vicarious Liability of All Defendants)

55. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if more fully set forth herein.

56. Defendants Poplar, Mariner and Sava are vicariously liable for the negligence of its agents and employees, acting within the course and scope of their employment, whose negligence caused or contributed to the death of Clara Spracklen.

57. Defendants Poplar, Mariner and Sava had a duty to Clara Spracklen and her family, directly and through its shareholders, employees, agents and representatives to take reasonable steps and precautions to prevent or minimize injuries to Clara Spracklen, and Defendants breached this duty through their negligence.

58. Defendants Poplar, Mariner and Sava, their shareholders, employees and agents, were negligent in multiple manners as specified herein including but, not limited to, routinely neglecting Clara Spracklen. Said negligence of the shareholders, employees, agents and representatives includes, but is not limited to, the actions or failure to act as set forth in the Claims for Relief stated in other paragraphs of this Complaint.

59. The persons for whom Defendants are vicariously liable were acting within the course and scope of their employment and/or agency with Defendants.

60. As a result of the negligence of Defendants' shareholders, employees and agents, lead to Clara Spracklen untimely death as described above.

## FOURTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty of All Defendants)

61. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if more fully set forth herein.

62. Clara Spracklen placed trust and confidence in the Defendants with respect to placement in a safe and supportive skilled nursing facility, and the care and treatment promised by Defendants for Clara Spracklen.

63. Clara Spracklen acted reasonably in placing such trust and confidence in the Defendants.

64. Clara Spracklen's trust and confidence was accepted, invited, and acquiesced by the Defendants.

65. The Defendants agreed to, and assumed responsibility for, and represented to Clara Spracklen that it would act for the benefit of Clara Spracklen with respect to her care, treatment, management and rehabilitation.

66. The Defendants were acting as a fiduciary of Clara Spracklen.

67. The Defendants and Plaintiff had a fiduciary relationship.

68. Defendants breached their fiduciary duty to Clara Spracklen by the negligent acts stated herein, by its failure to provide a safe, supportive environment, with the care, treatment and management it accepted the responsibility for by accepting Clara Spracklen into its skilled nursing facility.

14

69. As a direct and proximate result of the breach of its fiduciary duty, Clara Spracklen suffered injuries and tragic death as alleged above.

## FIFTH CLAIM FOR RELIEF
(Civil Conspiracy - All Defendants)

70. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if more fully set forth herein.

71. The Defendants' jointly participated in a conspiracy (unlawful tortious acts) to provide inadequate care in order to maximize profits. The wrongful acts identified in the above claim for relief were carried out by the Defendant's pursuant to the conspiracy, and for this they are jointly and severally liable.

72. As a proximate result of the joint conspiracy and wrongful acts, Clara Spracklen suffered those damages as set forth in this Complaint.

## SIXTH CLAIM FOR RELIEF
(Joint Venture – All Defendants)

73. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if more fully set forth herein.

74. The Defendants each had a right of control over the operation and management of Poplar. SSC Casper Operating Company, LLC, d/b/a Poplar Living Center, Mariner Health Care Management Company, Sava Senior Care, LLC, and Sava Senior Care, Incorporated had an actual or working agreement to combine their money, property, and/or time in the conduct of providing care to Clara Spracklen and other patients. In this agreement,

Defendants agreed to share the profits of the venture, and had the right of mutual control over the subject matter of the enterprise. These facts create a joint venture under Wyoming law, making each Defendant jointly and severally liable for any breach of the standard of care by any other Defendant.

### SEVENTH CLAIM FOR RELIEF
### (W.S. § 1-38-101 Wrongful Death – All Defendants)

75. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if more fully set forth herein.

76. Defendants' wrongful actions and neglect directly related to and caused the death of Clara Belle Spracklen pursuant to W.S. § 1-38-101.

77. Pursuant to W.S. § 1-38-101, Plaintiff is entitled to recover damages for loss of probable future companionship, society and comfort. Pecuniary loss sustained that resulting from the death of Ms. Spracklen.

### EIGHTH CLAIM FOR RELIEF
### (Punitive Damages – All Defendants)

78. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if more fully set forth herein.

79. Wyoming law recognizes and allows for punitive or exemplary damages. *Alexander v. Meduna*, 2002 WY 83 ¶39, 47 P.3d 206. An award of punitive damages is appropriate for outrageous or reckless or extreme or unconscionable conduct or for a wanton disregard of duty that presents a high risk of serious consequences for others. *Id.*

80. The conduct of Defendants, as set forth more fully above, and as developed more fully in discovery and briefed to this Court, was outrageous, reckless, posed a high risk of danger for others and was in willful and wanton disregard for consequences, the rights or the safety of others.

81. Defendants' willful and wanton disregard for the consequences, the rights or safety of its patients caused Plaintiffs' injuries, damages and eventually death.

82. Ms. Spracklen therefore claims and is entitled to punitive damages in this case.

**WHEREFORE,** Plaintiff prays for judgment in her favor and against the Defendants, and each of them, individually and severally, for compensatory and punitive damages in an amount to be determined by the trier of fact, together with pre and post-judgment interest as permitted by law; costs; expert witness fees; deposition expenses; and any such other and further relief as this Court deems just and proper.

**PLAINTIFF HEREBY DEMANDS A TRIAL TO A JURY.**

Respectfully submitted this 9th day of May 2011.

                              METIER LAW FIRM, LLC

                              */s/ Tom Metier*
                              T. Thomas Metier, Esq.